STATE of Missouri, Respondent,

v.

Paul Lewis VARSALONA and Sam Joseph
Legrotte, Appellants.

No. 45800.

Supreme Court of Missouri,
Division No. 1.

Feb. 10, 1958.

Walter A. Raymond, Kansas City, and J. Arnot Hill, Kansas City, for appellants.

John M. Dalton, Atty. Gen., W. Don Kennedy, Asst. Atty. Gen., for respondent.

COIL, Commissioner.

Paul Varsalona and Sam Legrotte, defendants below, have appealed from a judgment sentencing them to the state penitentiary in accordance with a verdict finding them "guilty of arson as charged" and fixing their punishment at two years.

Defendants' initial contention is that the information upon which they were tried was fatally defective in that it failed to charge them with an offense and that, consequently, the evidence adduced tending to prove the charges of the information failed to constitute proof of any crime. That contention must be sustained for the reasons which will appear.

The market and liquor store, known as Don's Drive In Liquors and Market at 1800 Benton in Kansas City had been under police surveillance for several nights. Defendants (owner and manager) left those premises about 2:10 a. m. on the morning of December 29. An explosion and fire occurred about forty or fifty minutes thereafter. The state's evidence tended to show that the fire burned in such a manner as to indicate it was of incendiary origin, that there was an accelerant on paper in the store aisles, and that there were present electrical appliances which could have been so combined by defendants as to start the fire at the time indicated. Those circumstances, the state contends, were sufficient to permit the jury reasonably to have found that the fire was of incendiary origin and by the criminal agency of defendants.

It should be noted, however, that the state did not attempt as part of its case to prove the ownership of the building or its contents, and defendants' evidence, apparently conceded to be correct by the state, was that defendant Varsalona and his wife owned the building, that Varsalona owned the personalty in the building, and that de-

fendant Legrotte was the manager of the business for and on behalf of Varsalona. Further, the state adduced no evidence tending to prove that any person was endangered by the fire or that the store building constituted any part of a dwelling or an establishment usually occupied by lodgers. Likewise, the state adduced no evidence tending to prove that the burning of the building in question in any way endangered the property of others, unless it be assumed that the burning of any building in any large city of necessity endangers other property, a matter to which we shall again refer.

The state did adduce some evidence, for the purpose of showing motive on the part of defendant Varsalona, that there was $25,000 insurance on the building and $30,-000 on the contents; that there was a deed of trust on the building and some chattel mortgages on certain equipment and fixtures; and that defendant owed money to various suppliers at the time of the fire. (We note, however, that the evidence did not indicate that the building or contents were overinsured and it is not readily apparent to us how financial advantage would have accrued to defendant Varsalona because of the insurance.) We shall assume, however, that there was some evidence from which an inference reasonably could have been drawn that Varsalona had a motive to burn his building and stock. Even so, however, such evidence, while admissible, though the charge was not under the statute relating to defrauding an insurer, State v. Berkowitz, 325 Mo. 519, 527, 29 S.W.2d 150, 153 [7], certainly did not tend to prove a constituent element of any offense mentioned or defined in Section 560.-020. (We observe parenthetically also that there was no evidence tending to show that defendant Legrotte knew of any existing insurance or knew of the accounts payable or deed of trust or chattel mortgages. State v. Greer, 243 Mo. 599, 606, 607, 147 S.W. 968, 969.)

Sections 560.010–560.035, V.A.M.S., inclusive (all section references are to sec-

tions of RSMo 1949), are laws which the reviser has labeled "arson" statutes, although the word "arson" is mentioned in those statutes (even though contained in the reviser's title of each section) only in Section 560.010. The present sections (§§ 560.010–560.035) are the result of the repeal in 1929 of eight former sections and the enactment of the five sections indicated. It appears from an examination of the former eight sections that the changes effected by them by the 1929 revision were such that no particular present section may be considered as covering the exact subject matter of any particular prior-to-1929 section. That fact is important only to point out that some of the cases which are digested under and thereby purport to relate to a certain present section, do so only in the sense that the reference tables in 42 V.A.M.S. arbitrarily indicate that a certain prior-to-1929 section was replaced by a particular present section.

█ There can be no doubt about the fact that, and the parties agree that, the instant information attempted to charge the felony mentioned in Section 560.020. It is also clear that the evidence adduced by the state and the verdict-directing instruction were directed to or based solely upon the words of that section. Section 560.020 should be read and construed in connection with and in the light of the other sections pertaining to "arson." We point out, therefore, the substance of all the present "arson" sections.

Section 560.010 provides that one shall be guilty of arson who sets fire to or burns any dwelling house or any building that is part of a dwelling house or belongs to it, or who burns any boat or vessel in which there is a human at the time, or burns a bridge or causeway upon a railroad whether it is his own or another's property.

Section 560.015 defines a "dwelling house" as used in Section 560.010 as every house, prison, jail, or other building usually occupied by lodgers, and provides that no outhouse, however, shall be deemed a dwelling house or part of a dwelling house within the meaning of Section 560.-010 unless it is actually a part of the dwelling house.

Section 560.020, the one with which we are particularly concerned, will be set forth in full hereinafter.

Section 560.025 provides in substance that anyone shall be guilty of a felony who burns any house, building, boat or vessel, or office, or depot or railroad car, or public warehouse, college, schoolhouse, or any public building, or any personalty consisting of listed grains and produce, or fuel, or lumber, or any vehicle used for transportation, or any goods, warehouse, or merchandise, or any other property not specifically named "and being the property of another," and also any person shall be guilty of a felony who burns any of the property mentioned above of which he is the owner or owns an interest with intent to injure or destroy any other property or to injure or defraud any other person.

Section 560.030 makes it a felony for anyone with intent to injure or defraud an insurer to burn personal property of any kind which at the time is insured against loss or damage by fire.

Section 560.035 defines an attempt to set fire to or burn, and makes the attempt to set fire to or burn any of the property mentioned in the preceding sections a felony.

Section 560.020, the section presently in question, is as follows: "Every person who shall willfully set fire to or burn any shop, warehouse, office, store house, factory, mill, church, meeting house, court house, workhouse, school, jail or any other public building or bridge or any other public property, and every distillery, gristmill, fulling machine, sawmill, carding machine or other machinery for manufacturing purposes or any building containing the same, or erected or used as a manufactory shall be deemed guilty of a felony and upon conviction therefor shall be punished by imprisonment in the penitentiary for a term not less than two nor more than ten years."

The information in the instant case was: "Now comes Sam Modica, Assistant Prosecuting Attorney for the State of Missouri, in and for the body of the County of Jackson, and upon his oath informs the Court, that Paul Lewis Varsalona and Sam Joseph Legrotte, whose Christian name in full is unknown to said Assistant Prosecuting Attorney, late of the county aforesaid, on the 29th day of December, 1955, at the County of Jackson, State of Missouri, did then and there unlawfully, feloniously, wilfully and maliciously set fire to and burn a certain shop and storehouse, located at 1800 Benton Boulevard, Kansas City, Jackson County, Missouri, and known as Don's Drive In Liquors and Market in Kansas City, Jackson County, Missouri; against the peace and dignity of the State."

The statute, in so far as concerns the language of instant information, provides that every person "who * * * willfully * * * burn[s] any shop [or] store house * * * shall be deemed guilty of a felony * * *." The information follows the words of the statute and thus charges essentially that Paul Varsalona and Sam Legrotte, on December 29, 1955, "unlawfully, feloniously, wilfully, and maliciously" burned a shop and storehouse at 1800 Benton in Kansas City. The only material difference in the language of the information and that of the statute is that the statute refers to one who shall "willfully burn," while the information charges that defendants "unlawfully, feloniously, wilfully, and maliciously" burned the shop and storehouse.

At common law, the crime of arson consisted of the malicious burning of another's house or outhouse. State v. McCoy, 162 Mo. 383, 387, 62 S.W. 991, 992. It was essential that the dwelling house be the property of another in the sense at least of being occupied by another. Wharton's Criminal Law and Procedure, Vol. 2, § 401, p. 14; State v. Myer, 259 Mo. 306, 313, 168 S.W. 717, 718. Our statutes, however, have changed the common law. Conse-

quently, the felonies described in the various "arson" sections are statutory offenses. It is apparent, therefore, that whether, under a particular statute, the ownership of the property or other facts and circumstances relating to the burning of property need be charged and proved does not necessarily depend upon the constituent elements of common-law arson. State v. Young, 153 Mo. 445, 449, 450, 55 S.W. 82, 83; State v. Myer, supra. Furthermore, it is said that generally an indictment or information which follows the language of a statute which purports to define a crime is sufficient if the statute sets forth all the constituent elements of the offense. State v. Bersch, 276 Mo. 397, 412, 207 S.W. 809, 813; State v. Ritter, 288 Mo. 381, 387 [1], 231 S.W. 606, 607; State v. Johnson, Mo., 293 S.W.2d 907, 909 [1–4]. (The difficulty in the application of any such rule is that it furnishes no guide to determine the decisive question, viz., whether the legislature intended that the statutory description of a particular offense did or did not embody all the constituent elements of that offense.)

Thus, in State v. Ritter, supra, it was held that an indictment (under present Section 560.030) which charged defendant with burning goods to defraud an insurer need not have alleged the name of the owner of the building in which the goods were located because the offense consisted, as the statute stated, in burning goods to defraud an insurer. And it was held in State v. Myer, supra, that where the gist of the arson described was danger to persons, the ownership of the building alleged to have been burned need not have been charged. On the other hand, it was said in State v. Johnson, supra, that Section 560.155 defined grand larceny as "feloniously stealing, taking and carrying away" any property of a value of $30 or over "belonging to another," but did not "set forth the constituent elements of the offense," and thus the essential constituent elements of grand larceny were as they had been at common law. It has been said also that "the statement that a statutory offense may be charged in the

language of the statute cannot be applied indiscriminately." State v. Mitnick, 339 Mo. 127, 130, 96 S.W.2d 43, 44 [1].

All of which causes us to reach the conclusion that the decisive question in the first instance is whether the legislature, by enactment of Section 560.020, intended to make it a felony for one to intentionally burn his own shop or warehouse or office or mill or factory or storehouse, irrespective of his purpose or intent and irrespective of the circumstances; or, stated differently, whether the legislature intended that one would be guilty of a crime punishable by confinement in the penitentiary for a period of from two to ten years if he burned his own building, even though he did so under circumstances which endangered the life of no person, endangered the property of no other person, and when there was no intent to injure or defraud, and no injury resulted to, any other person or thing.

■ Our conclusion is that, for the reasons which follow, we should ascribe no such intent to the legislature or ascribe any such meaning to Section 560.020.

In the first place, it seems to us that a consideration of the other four "arson" sections indicates clearly that it was not the intent of the legislature by the language of Section 560.020 to make the sole constituent element of the felony there mentioned the wilful burning of property, irrespective of ownership or any other circumstance. Sections 560.010 and 560.015, as heretofore noted, define an offense the gist of which is the danger to a person or persons, making it unnecessary to allege ownership or other circumstances except that the property burned was a dwelling house or a part thereof as defined in Section 560.015, or a vessel or boat in which there was a human being, or a bridge or causeway of a railroad. Section 560.025 defines an offense the gist of which is damage to property and makes it a felony to burn certain listed property and a felony also to burn *one's own property when that burning endangers the property of another*. Section 560.025 also describes, as does 560.030, an offense the gist of which is the defrauding of another either by the burning of a building or personal property, making ownership immaterial and thus making it unnecessary to allege ownership or to allege other facts except that the described property was burned to defraud a named person or insurer.

It would appear, therefore, that the legislature has specifically provided that the burning of one's own property was to constitute "arson" or a related statutory offense only when, because of the nature of the property or its occupancy, there was or was likely to be danger to a person or persons (§§ 560.010, 560.015) or when such burning endangered the property of another (§ 560.025) or was done to defraud another (§§ 560.025, 560.030). We are of the opinion, therefore, that the legislature would not have pointed out the instances in which burning one's own property would constitute arson or another felony and yet have intended by the broad and unrestricted language of Section 560.020 to make it a felony to burn one's own property irrespective of whether such burning was done under circumstances to bring it within the provisions of the instances so provided by the legislature.

Furthermore, the only applicable authority we find supports our conclusion. The two cases which bear on the instant problem are State v. Myer, supra, and State v. Greer, supra. In State v. Myer, Section 4507 RSMo 1909 was in question [259 Mo. 306, 168 S.W. 718]: "Every person who shall willfully set fire to or burn any shop, warehouse, office, storehouse or other building not being the subject of arson in the first degree, but adjoining to or within the curtilage of any inhabited dwelling house, so that such dwelling house shall be endangered by such firing, shall, upon conviction, be adjudged guilty of arson in the second degree." It is at once apparent that that section has in the main become a part of Sections 560.010 and 560.015 rather than a

part of Section 560.020, the one we are presently considering. The court in the Myer case pointed out that ownership of the building destroyed was immaterial under the provisions of that statute because the gist of the offense was danger to persons. The court said that the prior case of State v. Whitmore, 147 Mo. 78, 47 S.W. 1068, was overruled in so far as it held *"that an allegation of ownership is necessary in an indictment for arson, where the offense charged endangers life, * * *."* (Italics ours.) 168 S.W. 719. True, that language does not constitute an affirmative holding that an allegation of ownership is necessary under statutes describing offenses which endanger property only, but it is an indication of that court's view that ownership was a necessary allegation in indictments charging arson other than those cases in which life was endangered.

More specifically applicable to the present question, however, is the case of State v. Greer, supra. There, the owner of a building in which he operated a shoe store and shop, and one who kept the owner's books and who maintained an office in that building, were jointly charged with setting fire to the building with intent to defraud an insurance company. See State v. Steinkraus, 244 Mo. 152, 148 S.W. 877, the owner's case. Greer was the bookkeeper. The evidence failed to show that Greer had any knowledge that either the building or its contents were insured. The language of the court in reversing the conviction of defendant Greer is particularly significant in connection with the proper construction of present Section 560.020.

"Ordinarily, when one purposely or designedly performs an unlawful act, the law presumes that he intends the natural or usual consequences of such act. If, in attempting to commit one crime, he commit another, the law will carry or transmit the unlawful motive from the act intended to the act committed. Wharton's Criminal Law (2d Ed.), Vol. 1, § 320.

"However, that rule does not apply in this case. Under sections 4509, 4511, and 4512, RS 1909, if the shoeshop and contents had not been insured, and Steinkraus had burned them, or if defendant had assisted him in that act, no crime would have thereby been committed, *for the reason that the burning of uninsured property of that character only becomes a crime when done by some one other than the owner.* Wharton's Criminal Law (2d Ed.) §§ 841 and 843. However reprehensible it might have been for Steinkraus to burn his own property, or for another to assist him in that act, it only became a crime because of the intent to injure the insurer of the property; consequently to convict defendant it was necessary to prove that he had knowledge that the property was insured. Martin v. State, 28 Ala. 71; Kelley's Criminal Law (2d Ed.), § 604; State v. Hickam, 95 Mo. [322] 323, 8 S.W. 252, 6 Am.St.Rep. 54; People v. Kelly, 11 App.Div. 495, 42 N.Y.S. [756] 759." (Our italics.) 147 S.W. 969.

The court in the Greer case specifically held that the building and its contents, if uninsured, could have been burned by the owner and Greer and no crime would have been committed because the burning of that property, unless insured, became a crime only when done by someone other than the owner. The opinion in the Greer case was written in 1912. In 1929 Section 4039 (RSMo 1939, § 4431, and present § 560.-025) was enacted making it a felony to wilfully burn one's own property when to so do endangers the property of another or to so do with intent to defraud another. It would seem that if changes in the law so declared in the Greer opinion, other than that contained in present Section 560.025, were intended, such changes would have been made specifically (as in 560.025) and not by intendment couched in the general language of present Section 560.020.

Further, while not decisive, we think it significant that since the enactment of present Section 560.020 in 1929 there has been, so far as we are able to determine, only one reported case wherein the indictment or information was based upon that section. In State v. Crocker, Mo., 275 S.W.2d 293,

the information charged that defendant burned school buildings. While the information is not set forth in the opinion, we have examined our file and find that it was there charged that the involved buildings were the property of a certain school district: "W. R. J. Hughes, Prosecuting Attorney within and for the county of Iron and State of Missouri, under his oath of office and his hereto appended oath, informs the Court that on or about the 9th day of June, 1952, at and in the County of Iron and State of Missouri, one Millard E. Crocker did then and there wilfully, maliciously, unlawfully and feloniously set fire to and burn certain public buildings, towit: the School Building known as the White School and the woodshed appertaining thereto and used in connection with said School Building and located on the same plat of ground, both buildings being the property of School District No. 31 in Iron County, Missouri; against the peace and dignity of the State."

An examination of the instant record indicates that it was the state's theory, concurred in by the trial court, that the felony mentioned in Section 560.020 was completely proved when evidence was adduced tending to show that defendants acting together wilfully burned a store belonging to one of the defendants. It appears· from the prosecutor's closing argument that it was his theory that the burning of *any* property inevitably endangered the property of others and, therefore, we suppose, burning one's own property had been for that reason made a felony. If we assume that the burning of any property in Kansas City inevitably endangered the property of others (there was no evidence on the subject), then we point out that such a state of facts is specifically covered by Section 560.025 and any prosecution on that theory would properly have been based upon that section. Section 560.025 makes any person guilty of a felony who, inter alia, "shall .willfully * * * burn or cause to··be burned. any * * * [building] *of which* * * * *he is the owner or of which he owns an interest therein,* with the intent to injure or destroy any other property, or with the intent to injure or defraud any person, copartnership or corporation, government, state, county, city, school district or municipality, * * *." (Our italics.) The fact that Section 560.025 sets forth in detail the offense for which defendants were apparently being prosecuted is an additional reason why we think the legislature by the general language of Section 560.020 did not intend to treat with the burning of one's own property.

Finally, if it be that the legislature intended that the language of Section 560.020 encompass the wilful burning of one's own shop at a time and in a manner when and by which the life of a person is endangered and, therefore, intended, under those circumstances, that the gist of the offense is danger to persons and thus ownership of the property is immaterial; or if it be that the legislature intended that the language of Section 560.020 encompass the offense of wilfully burning one's own property and thereby endangering the property of another, even though that offense is specifically recognized in Section 560.-025; then we must hold that an information or indictment under Section 560.020 based upon either of the above-stated theories must have alleged the circumstances of the burning, else such an information or indictment would not have individuated the offense sufficiently to have informed the defendants of what the offense really was for which they were to be tried. "The rule is thus stated in State v. Kentner, 178 Mo. 487, 493, 77 S.W. 522, 524, quoting from Wharton's Cr.Pl. & Prac. (9th Ed.) § 220: 'On the general principles of common-law pleading, it may be said that it is sufficient to frame the indictment in the words of the statute in all cases when the statute so far individuates the offense that the offender has proper notice, from the mere adoption of statutory terms, what the offense he is to be tried for really is. But in no other case is it sufficient to follow the words of the

statute. It is no more allowable, under a statutory charge, to put the defendant on trial without specification of the offense, than it would be under a common-law charge.'" State v. Mitnick, supra, 96 S.W. 2d 44 [1]. For the purpose of determining the sufficiency of an indictment or information, that which is not contained therein does not exist. State v. Wolfner, 318 Mo. 1068, 1077, 2 S.W.2d 589, 592.

For the reasons stated we hold the information is fatally defective and therefore reverse the judgment and remand the case.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.